```
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF RHODE ISLAND
_____
                                    )
NARRAGANSETT INDIAN TRIBE, acting    )
by and through the NARRAGANSETT      )
INDIAN TRIBAL HISTORIC               )
PRESERVATION OFFICE,                 )
                                    )
        Plaintiff,                   )
                                    )
        v.                           )    C.A. No. 17-125 WES
                                    )
RHODE ISLAND DEPARTMENT OF           )
TRANSPORTATION; FEDERAL HIGHWAY      )
ADMINISTRATION; ADVISORY COUNCIL     )
ON HISTORIC PRESERVATION; RHODE      )
ISLAND HISTORICAL PRESERVATION &     )
HERITAGE COMMISSION,                 )
                                    )
        Defendants.                  )
_____)
```

## MEMORANDUM AND ORDER

WILLIAM E. SMITH, Chief Judge.

Before the Court are two Motions To Dismiss: the first motion (ECF No. 18), filed by Defendants the Federal Highway Administration ("FHWA") and the Advisory Council on Historic Preservation ("ACHP") (collectively, "Federal Defendants"), and the second motion (ECF No. 19) filed by the State of Rhode Island Department of Transportation ("RIDOT") and the Rhode Island Historical Preservation and Heritage Commission ("RIHPHC") (collectively, "State Defendants"). In response to both Motions, Plaintiff the Narragansett Indian Tribe ("Tribe"), by and through the Narragansett Indian Tribal Historical Preservation Office

("NITHPO") filed an objection (ECF No. 23). After careful consideration, both Motions To Dismiss are hereby GRANTED for the reasons that follow.

I. Background

This case stems from a dispute over an extensive highway project, the Providence Viaduct Bridge No. 578 Replacement Project,[1] and its prospective impact on historically significant land. In relation to the Undertaking, a Programmatic Agreement ("PA") was executed between Plaintiff, RIDOT, FHWA, and the Rhode Island State Historic Preservation Officer ("RISHPO") pursuant to Section 106 of the National Historic Preservation Act of 1966, 54 U.S.C. §§ 300101 et seq. ("NHPA").[2] (Compl. ¶ 10, ECF No. 1.) Effective October 3, 2011, the PA was instituted to govern the Undertaking, primarily to address any impact that it might have on historic land. (Id.) The PA included various stipulations concerning the transfer of land, which the parties later amended, in certain respects, on January 17, 2013. (Id. ¶ 11.)

---

[1] A project of this sort is referred to as an "Undertaking" in the relevant federal regulations. The Court adopts this terminology here.

[2] The NHPA was previously codified at 16 U.S.C. § 470 et seq.

Importantly, one such amended[3] stipulation provided that RIDOT must acquire and transfer ownership in various historic properties to the State of Rhode Island jointly with NITHPO "for and on behalf of" the Tribe. (Compl., Ex. B at 2-3.) These "significant Narragansett Indian Tribal cultural" properties (collectively, "Tribal Historical Properties"), located within the "Providence Covelands Archaeological District (RI 935)" included the Salt Pond Archaeological Preserve in Narragansett, the "Providence Boys Club – Camp Davis," and the "Chief Sachem Night Hawk property (a.k.a. Philip Peckham property)," both in Charlestown. (Id.) Included in each stipulation was assurance that "[a]ppropriate covenants that preserve the property and its cultural resources in perpetuity shall be included in the deed for said property." (Id.)

Although RIDOT acquired all of the Tribal Historical Properties, on September 16, 2013, it informed NITHPO via letter that it would not transfer the Providence Boys Club – Camp Davis property unless and until the Tribe waived its sovereign immunity with respect to the deed covenants and consented to subject the property to Rhode Island's jurisdiction, and civil and criminal

---

[3] The relevant amended stipulation, Stipulation No. 3, struck in its entirety and replaced the original Stipulation No. 3 in the PA.

3

laws.[4] (Compl., Ex. C at 2-3.) Plaintiff, however, refused to agree to RIDOT's proposed conditions, citing the absence of such conditions in both the PA and amendments thereto. (Compl. ¶ 16-17.) Additionally, attempts at resolution by the parties were not successful. (Id. ¶ 18-20.) On February 15, 2017, FHWA and/or RIDOT sought to terminate the PA. (Id. ¶ 21; Compl., Ex. D at 2.) On March 3, 2017, the ACHP advised Plaintiff via letter that because the parties had reached an impasse in resolving any "adverse effects to historic properties," the ACHP was required to issue advisory comments to the Secretary of Transportation. (Compl., Ex. D at 2.) The ACHP further acknowledged in the letter that "[b]oth the FHWA and the ACHP concluded that the requirement by RIDOT that the tribe waive its sovereign immunity in order to receive this land was not a requirement of the PA; however, efforts to urge the state to reconsider that condition have been unsuccessful." (Id. at 3.)

On March 31, 2017, Plaintiff initiated the instant lawsuit against Federal and State Defendants asserting breach-of-contract

---

[4] The Court notes that it is unclear whether RIDOT's condition applied solely to the Providence Boys Club property or if it encompassed each of the Tribal Historical Properties. The letter only mentions the Providence Boys Club; however, Plaintiff's Complaint speaks of this condition with respect to each of the Tribal Historical Properties discussed in the Amendment to the PA, which this Court will accept as true for purposes of this motion. (Compl. ¶ 12.)

4

claims and seeking declaratory and injunctive relief.  (Compl. ¶¶ 26-36.)  These motions followed.

II. Legal Standard

When construing a motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure, courts apply a similar standard to the standard for Rule 12(b)(6).[5]  In this context, the onus is on Plaintiff to establish that jurisdiction exists.[6]

To withstand a motion to dismiss under Rule 12(b)(6), a complaint must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[7] "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[8]

---

[5] Menge v. N. Am. Specialty Ins. Co., 905 F. Supp. 2d 414, 416 (D.R.I. 2012).

[6] Id.; see also Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995).

[7] Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 554, 570 (2007)).

[8] Twombly, 550 U.S. at 555 (internal citations omitted).

5

III. Discussion

    A. Statutory Background

The NHPA, 54 U.S.C. §§ 300101-320303, assigns federal agencies procedural responsibilities to contemplate the impact that its projects (i.e., projects federal agencies fund, license, or carry out) have on historic properties. At the core of the NHPA is the goal of ensuring that historical resources are preserved.[9] In relevant part, the NHPA provides that, "prior to the approval of the expenditure of any Federal funds on the undertaking . . ., [a federal agency] shall take into account the effect of the undertaking on any historic property."[10]

---

[9] See Te-Moak Tribe of W. Shoshone of Nev. v. U.S. Dep't of Interior, 608 F.3d 592, 609 (9th Cir. 2010).

[10] 54 U.S.C. § 306108 ("section 106"). Additionally, section 106 contemplates that the federal agency head shall allow the ACHP "a reasonable opportunity to comment with regard to the undertaking." Id.; see also 36 C.F.R. § 800.6(e), (g). The complete text of section 106 provides:

> The head of any Federal agency having direct or indirect jurisdiction over a proposed Federal or federally assisted undertaking in any State and the head of any Federal department or independent agency having authority to license any undertaking, prior to the approval of the expenditure of any Federal funds on the undertaking or prior to the issuance of any license, shall take into account the effect of the undertaking on any historic property. The head of the Federal agency shall afford the Council a reasonable opportunity to comment with regard to the undertaking.

54 U.S.C. § 306108.

Congress created the ACHP to oversee the implementation of section 106, and the ACHP has disseminated regulations to this end.[11] Chief among these regulations is the explanation of the "section 106 process" and its purpose.[12] The regulations explain that beginning at the early stages of project planning, section 106 strives "to accommodate historic preservation concerns with the needs of Federal undertakings through consultation among the agency official" and other interested parties.[13] The primary objective of this consultation is "to identify historic properties potentially affected by the undertaking, assess its effects and seek ways to avoid, minimize or mitigate any adverse effects on historic properties."[14] Moreover, the regulations permit the ACHP to "negotiate a programmatic agreement to govern the implementation of a particular program or the resolution of adverse effects from certain complex project situations or multiple undertakings."[15]

---

[11] See 54 U.S.C. §§ 304101, 304108; 36 C.F.R. § 800.

[12] 36 C.F.R. § 800.1.

[13] Id. § 800.1(a).

[14] Id.

[15] Id. § 800.14(b).

7

B. Federal Defendants' Motion To Dismiss (12(b)(1))

Despite the apparent intricacy at play between the NHPA and its corresponding regulations, Plaintiff's claims directed at Federal Defendants must fail for a simpler reason: there has been no waiver of sovereign immunity. When considering, as here, a suit brought against the United States or its agencies, the first step must be to consider whether sovereign immunity has been waived[16] because "[a]bsent express waiver of sovereign immunity, federal courts lack subject matter jurisdiction over suits against the United States."[17] For the federal government to consent to suit, "waiver of sovereign immunity must be 'unequivocally expressed' in statutory text."[18] In this instance, however, no such unequivocal expression of a waiver is present in the NHPA or the Declaratory Judgment Act, and therefore, a right of action can

---

[16] It is indeed ironic that at the heart of this dispute is Plaintiff's refusal to waive its own sovereign immunity (Compl. ¶ 16-18), and the absence of any express waiver of sovereign immunity by Federal Defendants ultimately defeats Plaintiff's claim.

[17] See Limar Shipping Ltd. v. United States, 324 F.3d 1, 6 (1st Cir. 2003); see also FAA v. Cooper, 566 U.S. 284, 290 (2012); Puerto Rico v. United States, 490 F.3d 50, 57 (1st Cir. 2007) ("It is long settled law that, as an attribute of sovereign immunity, the United States and its agencies may not be subject to judicial proceedings unless there has been an express waiver of that immunity.") (quoting EPA v. Gen. Elec. Co., 197 F.3d 592, 597 (2d Cir. 1999)).

[18] Cooper, 566 U.S. at 290 (quoting Lane v. Pena, 518 U.S. 187, 192 (1996)).

8

only exist under the Administrative Procedure Act, 5 U.S.C. § 701 et seq. ("APA").[19]

Yet it seems Plaintiff's citation to the APA is similarly unavailing. Although the APA explicitly provides for a waiver of sovereign immunity, it only permits "judicial review of the final actions taken by federal agencies."[20] Under well-established administrative law jurisprudence, "'a final agency action' is one that 'mark[s] the consummation of the agency's decisionmaking process.'"[21] Here, Plaintiff's claims for declaratory judgment, injunctive relief, and breach of contract, are generally premised on RIDOT's refusal to transfer the Tribal Historic Properties' title to Plaintiff. Indeed, it appears that the only allegation Plaintiff directs at Federal Defendants is that, "FHWA has in its possession or controls funds allocated to fulfill its agreements

---

[19] See San Carlos Apache Tribe v. United States, 417 F.3d 1091, 1096 (9th Cir. 2005) ("NHPA offers no basis to infer a waiver of sovereign immunity."); see also Muirhead v. Mecham, 427 F.3d 14, 17 n.1 (1st Cir. 2005) ("[T]he Declaratory Judgment Act, 28 U.S.C. § 2201 . . . plainly does not operate as an express waiver of sovereign immunity.").

[20] Baillargeon v. Drug Enf't Admin., 638 F. Supp. 2d 235, 242 (D.R.I. 2009); see also Franklin v. Massachusetts, 505 U.S. 788, 796 (1992) ("The APA provides for judicial review of 'final agency action for which there is no other adequate remedy in a court.") (quoting 5 U.S.C. § 704).

[21] Omnipoint Holdings, Inc. v. City of Cranston, 586 F.3d 38, 46 (1st Cir. 2009) (quoting Whitman v. Am. Trucking Ass'ns, 531 U.S. 457, 478 (2001)).

under the PA." (Compl. ¶ 25.) Notably, Plaintiff's Complaint is devoid of any assertion that Federal Defendants' final agency action caused Plaintiff harm.[22] Accordingly, Federal Defendants' Motion To Dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure is GRANTED.

      C. State Defendants' Motion To Dismiss

State Defendants move to dismiss for failure to state a claim upon which relief can be granted based on Rule 12(b)(6) of the Federal Rules of Civil Procedure. (State Defendants' Mot. To Dismiss, ECF No. 19 at 1.) In support of its motion, State Defendants suggest that each of Plaintiff's claims outlined in its Complaint should be dismissed because: (1) a private right of action is not provided by the NHPA; (2) the PA's express terms permit termination at any time; and (3) Plaintiff has not demonstrated a clear entitlement to injunctive relief. (Id.)

This Court need not delve into the merits of State Defendants' assertions because Plaintiff cannot clear a preliminary jurisdictional roadblock.[23] Plaintiff's claims pursuant to the

---

[22] Indeed, Plaintiff's claim against Federal Defendants is deficient for the additional reason that Plaintiff "did not plead an APA claim in a separate count or as a cause of action, but only asserted jurisdiction under the APA." Town of Portsmouth v. Lewis, 813 F.3d 54, 63 (1st Cir. 2016).

[23] I briefly pause to acknowledge that State Defendants moved to dismiss Plaintiff's claim for failure to state a claim based on Rule 12(b)(6) of the Federal Rules of Civil Procedure. Despite not moving under 12(b)(1) for lack of subject matter jurisdiction,

10

Declaratory Judgment Act must fail because "[t]he Declaratory Judgment Act does not in itself confer subject matter jurisdiction; it provides a remedy for disputes already having federal jurisdiction."[24] In other words, to survive a motion to dismiss, Plaintiff's claims must "come within the federal courts' jurisdiction on some other basis."[25]

The two other bases that Plaintiff cites to afford jurisdiction, that is, the federal questions from which this dispute emanates, are the APA and the NHPA. Plaintiff's averment with respect to the APA is easily disposed of, however, because "the APA only provides for review of federal agency action . . . . It does not provide a right of action against a state agency."[26] This obviates Plaintiff's reliance on the APA as a jurisdictional

---

I begin addressing jurisdictional hurdles Plaintiff faces because "[w]hen a requirement goes to subject-matter jurisdiction, courts are obligated to consider sua sponte issues that the parties have disclaimed or have not presented . . . . Subject matter jurisdiction can never be waived or forfeited." Gonzalez v. Thaler, 565 U.S. 134, 141 (2012).

[24] Ernst & Young v. Depositors Econ. Prot. Corp., 862 F. Supp. 709, 713 (D.R.I. 1994) aff'd, 45 F.3d 530 (1st Cir. 1995); see also Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671-72 (1950) (explaining that although the Declaratory Judgment Act expanded "the range of remedies" one may seek in federal court, it did not enlarge federal courts' jurisdiction).

[25] Ernst & Young v. Depositors Econ. Prot. Corp., 45 F.3d 530, 534 (1st Cir. 1995).

[26] Town of Portsmouth, 813 F.3d at 64.

hook in asserting claims against RIDOT and RIHPHC — both state-agency defendants.

Knocking out Plaintiff's reliance on the APA, the Court must still consider whether Plaintiff could be entitled to relief pursuant to the NHPA.[27] As an initial matter, the Court notes that the crucial inquiry in this respect, i.e., whether Section 106 of the NHPA confers a private right of action, is one that the First Circuit Court of Appeals has not yet answered.[28] Notwithstanding, this Court is ultimately persuaded by the reasoning of courts that have answered this question in the negative.[29]

In Karst Environmental Education and Protection, Inc. v. EPA, 475 F.3d 1291, 1295 (D.C. Cir. 2007), and San Carlos Apache Tribe v. United States, 417 F.3d 1091, 1099 (9th Cir. 2005), the D.C. Circuit Court of Appeals and the Ninth Circuit Court of Appeals held that Section 106 of the NHPA confers no private right of

---

[27] I note that, despite some murkiness in the law as to whether dismissal based on the absence of a private right of action should be for failure to state a claim or lack of jurisdiction, I am confident that such a claim is properly disposed of by way of a Rule 12(b)(6) motion. See Arroyo-Torres v. Ponce Fed. Bank, F.B.S., 918 F.2d 276, 280 (1st Cir. 1990).

[28] See, e.g., Narragansett Indian Tribe v. Warwick Sewer Auth., 334 F.3d 161, 166 n.4 (1st Cir. 2003) (assuming, without deciding, that NHPA bestows private right of action).

[29] See, e.g., Karst Envtl. Educ. and Prot., Inc. v. EPA, 475 F.3d 1291, 1295 (D.C. Cir. 2007); San Carlos Apache Tribe v. United States, 417 F.3d 1091, 1099 (9th Cir. 2005); Friends of Hamilton Grange v. Salazar, No. 08 Civ. 5220, 2009 WL 650262, at *20 (S.D.N.Y. 2009).

action.  Central to the Ninth Circuit's holding in San Carlos Apache Tribe was its reliance on the United States Supreme Court's decision in Alexander v. Sandoval, 532 U.S. 275 (2001), in which the Court held that § 602 of Title VI of the Civil Rights Act of 1964 did not confer a private right of action.  Specifically, in Sandoval, the Supreme Court declared that, "[s]tatutes that focus on the person regulated rather than the individuals protected create 'no implication of an intent to confer rights on a particular class of persons.'"[30]  In gleaning no congressional intent to create a private right of action with respect to § 602 of Title VI of the Civil Rights Act, the Court added:  "Section 602 is yet a step further removed: It focuses neither on the individuals protected nor even on the funding recipients being regulated, but on the agencies that will do the regulating."[31]  The Ninth Circuit in San Carlos Apache Tribe relied on this very distinction and held that, like § 602 of Title VI of the Civil Rights Act, "[t]he thrust of § 106 is not directed to individuals or entities that may be harmed through violation of NHPA's dictates, but rather, . . . to the persons regulated."[32]

---

[30] 532 U.S. at 289 (quoting California v. Sierra Club, 451 U.S. 287, 294 (1981)).

[31] Id. (emphasis added).

[32] San Carlos Apache Tribe, 417 F.3d at 1095.  To further bolster its conclusion that the NHPA does not confer a private right of action, the Ninth Circuit analogized the NHPA to its

13

The Court is satisfied, then, that § 106 of the NHPA does not confer a private right of action.[33] Therefore, because the NHPA does not provide a private right of action and thus Plaintiff cannot be entitled to relief, the Court need not address Plaintiff's additional arguments. Plaintiff fails to state a claim upon which relief can be granted such that State Defendants' Motion To Dismiss is hereby GRANTED.

---

"close statutory analog," the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321-4370. Id. at 1097-98. Distilled to its essence, the Ninth Circuit emphasized that like NEPA, NHPA's "stop, look, and listen" obligation is imposed upon government agencies, rather than private persons, which militates against implying a private right of action. Id. Notably, the First Circuit Court of Appeals recently reaffirmed its express holding that "NEPA provides no right of action at all." Town of Portsmouth, 813 F.3d at 62.

[33] This Court acknowledges that certain courts have disagreed with this conclusion, having found that the NHPA confers a private right of action. See, e.g., Boarhead Corp. v. Erickson, 923 F.2d 1011, 1017 (3rd Cir. 1991); Vieux Carre Prop. Owners, Residents & Assocs. v. Brown, 875 F.2d 453, 458 (5th Cir. 1989). These decisions came before the Supreme Court's guidance in Sandoval, which casts a shadow over them. Indeed, more recently the Fifth Circuit Court of Appeals, while noting it was bound by its prior decision, acknowledged that, "the Supreme Court's recent jurisprudence casts serious doubt on the continued viability of the private right of action under the NHPA." Friends of St. Xavier Cabrini Church v. FEMA, 658 F.3d 460, 466 n.2 (5th Cir. 2011).

IV. Conclusion

Accordingly, Federal Defendants' Motion To Dismiss (ECF No. 18) and State Defendants' Motion To Dismiss (ECF No. 19) are hereby GRANTED.

IT IS SO ORDERED.

/s/ William E. Smith
William E. Smith
Chief Judge
Date:   September 11, 2017